People v Copeman (2026 NY Slip Op 50090(U))

[*1]

People v Copeman

2026 NY Slip Op 50090(U)

Decided on January 30, 2026

Criminal Court Of The City Of New York, Kings County

Pilmar, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 30, 2026
Criminal Court of the City of New York, Kings County

The People of the State of New York

againstNiah Copeman, Defendant

Docket No. CR-031899-25KN

People: Kings County District Attorney's Office by ADA, Ji Ah Kim, Esq.Defendant: Brooklyn Defender Services by Noreen Anderson, Esq.

Philip N. Pilmar, J.

Defendant Niah Copeman moves for dismissal, arguing that omissions in the People's discovery renders their certificate of compliance ("COC") invalid and statement of readiness ("SOR") illusory, and accordingly, that the People have violated the defendant's right to a speedy trial. Additionally, defense counsel moves to preclude the People's use at trial of an unnoticed statement allegedly made by the defendant. For the reasons set forth below, the defendant's motion to preclude the statement is GRANTED and the defendant's motion to dismiss is DENIED.[FN1]
BACKGROUNDThe Court assumes the parties' familiarity with the underlying facts. In sum, on July 3, 2025, the defendant was arraigned on a misdemeanor complaint charging him with Driving While Under the Influence of Alcohol or Drugs and related charges. On September 25, 2025, the People filed a superseding information, along with their COC, SOR, and NDF. On October 2, 2025, defense counsel sent an initial conferral email identifying discovery that was allegedly missing. On October 14, 2025, the People responded. On October 28, 2025, defense counsel and the ADA spoke by phone. On October 29, 2025, the ADA sent an email in response, including confirming that certain undisclosed discovery existed and would be provided. On October 30, 2025, defense counsel filed the instant motion. On November 8 and November 18, 2025, the People served additional discovery and filed supplemental COC's. 
The defendant's motion principally claims that the People did not produce the following items of discovery: a) two 911 calls and related materials; b) body-worn camera footage ("BWC") from an inventory search; c) Fire Department of New York ("FDNY") and EMS [*2]records for a civilian witness and related contact information for potential FDNY/EMS witnesses; d) two photographs taken by a New York City Police Department ("NYPD") officer; and e) impeachment materials related to seven NYPD officers.[FN2]

APPLICABLE LAW
New York State's revised discovery laws, effective August 7, 2025, require the People to disclose anything relevant to the subject matter of the charges (CPL 245.20). As relevant to this motion, "all items and information related to the prosecution of a charge in the possession of any New York state or local police or law enforcement agency shall be deemed to be in the possession of the prosecution" (CPL 245.20[2]). In fulfilling their discovery obligations, the People are required to act in good faith and with due diligence. A COC filed contingent to these two benchmarks will not be invalidated because the People were unable to effectuate disclosure despite their best efforts (see People v Bay, 41 NY3d 200, 212 [2023] ("There is no rule of 'strict liability'; that is, the statute does not require or anticipate a 'perfect prosecutor.' On the other hand, the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of diligence.").
In assessing the People's due diligence, the court must evaluate the totality of the People's efforts (see Bay, 41 NY3d at 211-12). In doing so, the court must consider, but is not limited to, the following factors: "the efforts made by the prosecutor to comply with the requirements of this article; the volume of discovery provided and the volume of discovery outstanding; the complexity of the case; whether the prosecutor knew that the belatedly disclosed or allegedly missing material existed; the explanation for any alleged discovery lapse; the prosecutor's response when apprised of any allegedly missing discovery; whether the belated discovery was substantively duplicative, insignificant, or easily remedied; whether the omission was corrected; whether the prosecution self-reported the error and took prompt remedial action without court intervention; and whether the prosecution's delayed disclosure of discovery was prejudicial to the defense or otherwise impeded the defense's ability to effectively investigate the case or prepare for trial." (CPL 245.50[5][a].) No single factor is determinative as to the People's due diligence.
If the Court finds that the People did not exercise due diligence and that their SOR was illusory, the speedy trial clock will be deemed to not have stopped upon the filing of the SOR and the People will be charged under CPL 30.30 with any days that elapsed unless there is another basis to find that the speedy trial clock was stopped (see People v England, 84 NY2d 1, 4 [1994] ("A statement of readiness at a time when the People are not actually ready is illusory and insufficient to stop the running of the speedy trial clock.")).
Before seeking the court's intervention regarding discovery, the parties are required to diligently confer. Any motion challenging the People's COC must be accompanied by an affirmation of good faith indicating that, despite diligent efforts to resolve the discovery omissions, counsel was unable to reach an accommodation. (CPL 245.50[4][c].) 

DISCUSSION
Initially, the defendant's application to preclude the People from using his unnoticed statement contained in the superseding information, to wit: that he hit a car, is granted. The People served statement notice pursuant to CPL 710.30(1)(a) at arraignment. However, the defendant was not given any notice of the People's intention to use the additional statement in the superseding information as required pursuant to CPL 710.30(1)(a). Accordingly, the People are precluded from using that statement.
However, the defendant's motion to dismiss is denied. The Court finds that, despite the People failing to turn over a few items of discovery, the People's COC was valid when considering the CPL 245.50(5)(a) factors.
Regarding the two missing 911 calls and related materials, the People admit that they made an inadvertent error in failing to disclose this material when they filed their COC but note that they did produce six other 911 calls. When defense counsel told the ADA that the calls were missing, the People located the calls, served this material on defense counsel and filed a supplemental COC. Similarly, although the defendant correctly points out that the discovery indicated that an inventory search was conducted and that the ADA should have known there could have been BWC footage of the inventory search, the assigned ADA appeared to genuinely not know that an inventory search had been conducted based on the ADA's email response to defense counsel. The ADA conducted further investigation after defense counsel's conferral, determined there was BWC footage from the inventory search, and disclosed it. Thus, with regard to these two items of disclosure, the recent discovery reforms enacted by the Legislature in 2025 worked exactly as intended: defense counsel determined some items of discovery were missing, the ADA investigated the matter, the ADA determined the defense was correct, and the discovery was produced shortly thereafter. (Cf. People v Emanuel, 239 AD3d 767, 768 [2d Dept 2025] (People's SOR was not illusory where "the record establishes that the People's failure to disclose the evidence in a timely fashion was inadvertent and without bad faith or a lack of due diligence"); People v Williams, 224 AD3d 998, 1006 [3d Dept 2024].)
Regarding the medical records of the civilian witness and related FDNY/EMS paperwork, the Court finds that the items are not discoverable but not for the reasons advanced by the People. According to the defense, "NYPD officers called EMS for a civilian witness who claimed to have been sitting in his parked car during the accident and sustained injuries because of the collision." (Def.'s Mem. at 16). The People respond that they have no obligation to get these records because those records require a subpoena, and the People are not required to disclose records that the defendant could also subpoena. That may be generally true, but the People fail to address People v Rahman, 79 Misc 3d 129(A) [App Term 2d Dept 2023]. In that case, the Appellate Term held that, pursuant to CPL 245.20(1)(j), the People failed to exercise due diligence where they did not seek FDNY/EMS medical records after EMS was summoned by the police to treat an assault victim who walked into a precinct. (See also CPL 245.20[1][j] (requiring disclosure of all reports "relating to the criminal action or proceeding" of "physical or mental examinations" "which were made by or at the request or direction of a public servant engaged in law enforcement activity")). Thus, under binding precedent, the People are required to subpoena and disclose relevant medical records if the NYPD requests FDNY/EMS assistance. However, despite the People's misunderstanding of the law, they did not commit a discovery violation because the medical records of a civilian witness are irrelevant to a charge of driving while intoxicated. Unlike in Rahman where the injuries of an assault victim are critical evidence, whether a civilian witness was injured from a car crash is irrelevant to whether the [*3]defendant was under the influence of alcohol when he crashed his vehicle and would almost certainly be excluded by the trial judge as both irrelevant and prejudicial to the defendant. Thus, although the Court encourages the People to review Rahman and to ensure that medical records are subpoenaed by the People in appropriate cases, under the facts of this case, the People did not violate CPL 245.20 by not subpoenaing these records because they do not relate to the criminal action or proceeding. 
With respect to the missing photographs, defense counsel contends that BWC shows Officer Jibril taking a photograph of the EMT's phone and a civilian witness's phone. The People submit that all photographs contained on the officer's phone were turned over, although they fail to address whether they conducted follow up due diligence to confirm a mistake was not previously made. But even if these two photographs do exist (and the assigned ADA should certainly review defense counsel's information with the officer to confirm whether these photographs do exist), their omission would not impact the validity of the People's COC because they appear to have little to no relevance to the instant charges.
Finally, regarding the alleged missing Giglio materials for seven officers, only three of these officers are currently identified as testifying (Officers Jibril, Caride, and O'Neill), with four others listed as "undecided," and the Court does not find that the People have a discovery obligation with respect to witnesses that may not testify (cf. People v Henderson, 237 AD3d 853, 854 [2d Dept 2025] ("As the People correctly contend, at the time they filed the COC, they were not required to disclose [the impeachment] records pursuant to CPL 245.20(1)(k)(iv) because they did not intend to call the detective as a testifying witness")). With respect to Officers Jibril and O'Neill, the only allegation is that the People provided outdated Civilian Complaint Review Board ("CCRB") histories. But the defendant admits that the "CCRB is not a law enforcement agency, so these materials are not automatically deemed to be in the People's possession." (Def.'s Mem. at 17.)[FN3]
With respect to Officer Caride, defense counsel told the assigned ADA that the IAB report may be incomplete, and the assigned ADA responded they would investigate the matter. Unfortunately, the People's response to the Court fails to discuss whether an IAB report was in fact missing or subsequently produced, so the Court assumes for purposes of this motion that there is at least some impeachment material that was not disclosed.[FN4]

Now that the Court has reviewed the items that were not disclosed prior to the filing of the COC, the Court must evaluate the factors set forth in CPL 245.50(5)(a) to determine whether the People acted with due diligence and whether the SOR was illusory. Although this case is certainly not complex and the discovery is not voluminous, the amount of discovery that was not [*4]turned over prior to the filing of the COC is minimal and the People mostly remedied that failure without Court intervention. After defense counsel conferred with the assigned ADA regarding the missing 911 calls and BWC footage, the ADA investigated the issue and disclosed the material. There is absolutely no evidence to support defense counsel's claim that the assigned ADA may not have been "truthful" in stating that they did not know an inventory search was conducted. As stated above, absent one IAB report for one officer, the other items of discovery which have not been turned over are not items the People must disclose prior to filing a COC. And with respect to the one IAB report, the Court finds that, even though it was not turned over absent Court intervention, the failure to turn over one report for one officer does not warrant dismissal when weighed against all of the factors in the statute. Finally, the Court notes that the minimal delay in disclosing these items of discovery does not appear to have caused any prejudice to the defense or impeded its ability to investigate the case and prepare for trial. In particular, with respect to the IAB report, since the People will of course be required to produce it prior to any hearings and trial if this officer testifies, the defendant will be able to impeach the witness with this information if the report does contain substantive impeachment material. If there is any prejudice to the defense that arose after the filing of the motion papers, the defendant can apply to the trial court judge for any remedies or sanctions pursuant to CPL 245.80.

CONCLUSION
For the reasons set forth above, the Court grants the motion to preclude the unnoticed statement but finds the People's COC to be valid and denies the defendant's motion to invalidate the COC. Additionally, since the People have only expended 84 days of chargeable time between the filing of the accusatory instrument on July 3, 2025, to the filing of their COC and SOR on September 25, 2025, they did not exceed their 90-day speedy trial time limitation. Accordingly, defendant's motion to dismiss is denied.
This constitutes the decision and order of the court.
Dated: January 30, 2026ENTER:Hon. Philip N. Pilmar 
Judge, Criminal Court

Footnotes

Footnote 1:This decision revises the Court's prior decision of December 12, 2025, and that decision is withdrawn.

Footnote 2:The defendant also argues that the People failed to disclose an IDTU logbook. The People state that the IDTU logbook does not exist and has not been created for the past several years, and the defendant does not claim otherwise in his reply.

Footnote 3:Although the failure to provide current CCRB information for the NYPD witnesses is not a violation of the CPL (and the CCRB reports are publicly available), the Court does not understand why the People are providing outdated CCRB reports and requests that the assigned ADA provide updated reports. 

Footnote 4:Because CPL 245.20(1)(k) only contains a limitation that impeachment material "relate to the subject matter of the case" and not "the subject matter of the charges," "[f]or impeachment purposes, all that is required for impeachment material to be 'related to the subject matter of the case' is that it relate to the credibility of a witness in the case" (People v Coley, 240 AD3d 122, 134 [2d Dept 2025]).